MICHIGAN BELL TELEPHONE COMPANY v PUBLIC SERVICE
COMMISSION

Docket No. 77-3729. Submitted June 21, 1978, at Lansing.—Decided
August 8, 1978. Leave to appeal applied for.

The Michigan Public Service Commission granted Michigan Bell
Telephone Company a rate increase. Michigan Bell then ap-
pealed to the Ingham Circuit Court claiming errors in setting
the rate in the treatment of business information system
payments to an affiliated company and in amortization of a
state income tax reserve. While the appeal was pending, the
commission granted Michigan Bell a further rate increase, in a
subsequent action, which exceeded the amount being sought in
circuit court. The Michigan Attorney General participated as
an intervening defendant. The commission sought summary
judgment arguing mootness. The circuit court, James T. Kall-
man, J., found the issues were not moot, and affirmed the
commission's order. Michigan Bell appeals and the commission
cross-appeals. Held:

The public interest exception to the mootness doctrine ap-
plies to this case. Such exception permits review where the
issues involved are of continuing public interest, capable of
repetition, yet also capable of evading review. Michigan Bell
did not meet its burden of proof since it did not show by clear
and convincing evidence that the order of the commission
setting the utility's rates was unlawful or unreasonable. It was
not unreasonable for the commission to allow as reasonable
expenses for business information systems the costs of only
those projects which Michigan Bell actually implements. Michi-
gan Bell also did not demonstrate error on the part of the
commission in the calculation of the amount of Bell's state
income tax reserve to be amortized to income.

Affirmed.

1. APPEAL AND ERROR—MOOTNESS—EXCEPTION—PUBLIC INTEREST.
The mootness doctrine has a public interest exception which

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 768.
[2] 64 Am Jur 2d, Public Utilities §§ 126–130.

permits review where the issues involved are of continuing public interest, capable of repetition, yet also capable of evading review.

2. PUBLIC SERVICE COMMISSIONS—UTILITIES—APPEAL AND ERROR—
   RATES—BURDEN OF PROOF—STATUTES.

    A public utility may bring an action to vacate an order of the Public Service Commission which sets the utility's rates; the burden of proof in such action is on the utility to show by clear and convincing evidence that the order of the commission is unlawful or unreasonable (MCL 462.26[e]; MSA 22.45[e]).

*Jack H. Shuler, H. Wayne Wells, and Honigman, Miller, Schwartz & Cohn (by Jason L. Honigman and John M. Kamins),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Hugh B. Anderson* and *Roderick S. Coy,* Assistants Attorney General, for intervening defendant-appellee.

*Don L. Keskey,* Assistant Attorney General, for defendant.

Before: R. B. BURNS, P. J., and D. F. WALSH and M. E. CLEMENTS,* JJ.

R. B. BURNS, P. J. In April, 1975, Michigan Bell Telephone Company filed case no. U-4820 with the Public Service Commission, requesting authority to raise its rates so as to increase its annual revenue by approximately $88 million. On May 4, 1976, the commission granted Michigan Bell an estimated rate increase of $52.172 million per year. Michigan Bell appealed U-4820 to Ingham County Circuit Court, claiming the commission erred in, among other things, its treatment of business information system (hereinafter BIS) payments to an affiliated company, and amortization

---

* Circuit judge, sitting on the Court of Appeals by assignment.

of a state income tax reserve. While that appeal was pending, the commission granted Michigan Bell a further rate increase in a subsequent case, no. U-5125, which exceeded the amount being sought in circuit court in U-4820. When Michigan Bell failed to appeal within the statutory period in U-5125, the commission sought summary judgment in U-4820, arguing mootness. The circuit court found the issues were not moot, and, reaching the substantive issues, affirmed the commission's order. Michigan Bell appealed to this Court, raising the substantive issues, and the commission cross appealed on the mootness issue. We affirm the judgment of the circuit court.

## I MOOTNESS

· The commission argues that the rates set in U-5125 supercede those set in U-4820. Since Michigan Bell did not appeal in U-5125, no change can be made in current rates. Because the rates set in U-4820 have been superceded, those rates are now final and defunct. Any attempt to change the rates in either U-4820 or U-5125 would be prohibited retroactive ratemaking. See *Michigan Bell Telephone Co v Public Service Comm,* 315 Mich 533; 24 NW2d 200 (1946). Consequently, no relief can be granted, and the issues presented by Michigan Bell on appeal are moot.

The circuit court rejected the commission's theory for two reasons. First, the statutory scheme for rate setting contemplates review of commission determinations on appeal. MCL 460.4, 462.26; MSA 22.13(4), 22.45. Since it is Michigan Bell's practice to seek new rate determinations after each commission decision, and since the appeal process generally takes longer than the commission's resolution of each rate case, almost inevi-

tably new rates will be set before the appeal on the old rates is decided. If the new rate determination rendered the contested issues in the old rate case moot, the review scheme would be rendered a nullity. Second, even assuming no relief could be granted in this case, the mootness doctrine has an exception permitting review where the issues involved are of continuing public interest, capable of repetition, yet also capable of evading review. See *Southern Pacific Terminal Co v Interstate Commerce Comm,* 219 US 498; 31 S Ct 279; 55 L Ed 310 (1911), *Alton & S R Co v International Ass'n of Machinists & Aerospace Workers,* 150 US App DC 36, 43; 463 F2d 872, 879 (1972).

The commission made a similar mootness argument before this Court in the recent case of *General Telephone Co of Michigan v Public Service Comm,* 78 Mich App 528; 260 NW2d 874 (1977). In *General Telephone,* the utility conceded that a subsequent rate increase precluded relief in that particular case. As a consequence, this Court also assumed that the retroactivity doctrine would preclude relief. However, this Court reached the substantive issues presented under the second rationale advanced by the trial court in the instant case, the public interest exception to the mootness doctrine, because the errors were likely to recur in the future.

The mootness issue presents two sub-issues. First, whether the substantive issues are moot because no relief can be granted in this case, and second, if moot, whether we may reach the substantive issues under the public interest exception to the mootness doctrine. Michigan Bell primarily argues the second sub-issue, but raises by implication the first sub-issue, since it requests that relief be granted in the instant case.

Assuming mootness, the public interest exception clearly applies in this case. The BIS payments are ongoing expenditures which will be taken into account in future rate cases, and the amortization of the state income tax reserve will extend over five years. Unless we reach these issues in the instant case, they may never be resolved by the courts.

Because we resolve the substantive issues against Michigan Bell, we need not determine whether relief could have been granted in the instant case. *Michigan Bell Telephone Co v Public Service Comm, supra,* is of questionable application to the instant situation, and the circuit court has raised a substantial question as to the applicability of the mootness doctrine in light of Michigan Bell's right of review. While we are putting the cart before the horse by reviewing under the exception without first determining whether the substantive issues are moot, the exception to the mootness doctrine provides sufficient justification for reaching the substantive issues.

## II BIS PAYMENTS

Michigan Bell is a wholly owned subsidiary of American Telephone and Telegraph Company (hereinafter AT&T). AT&T also wholly owns Western Electric, its manufacturing unit. AT&T and Western Electric each own 50 per cent of Bell Telephone Laboratories, Inc. (hereinafter Bell Labs), their research and development unit. Bell Labs has a BIS agreement with Michigan Bell and other operating companies of the Bell System, generally owned by AT&T, to develop for the operating companies electronic data processing and business information systems. For the test year 1974, Bell Labs developed or was developing

29 projects, of which Michigan Bell implemented five and a part of another, planned to implement five more, and had no plans to implement the remainder.

The expense of developing BIS projects is shared among the operating companies on a proportional basis. Michigan Bell's average obligation is 3.5 per cent of the total cost, based on (1) the proportion of its gross plant to the aggregate gross plant of all operating companies and (2) the proportion of its operating expenses to all operating expenses of all operating companies.

The commission found that Michigan Bell was not obtaining its money's worth from BIS, and that present ratepayers were not receiving direct benefits from BIS expenditures for projects not implemented. In calculating rates, the commission adjusted net operating income upward $741,000 to reflect as a reasonable expense for BIS a lesser amount than was actually paid, with the proviso that, as Michigan Bell implements future projects, it may amortize the costs thereof over a five-year period.

Michigan Bell must show by clear and convincing evidence that the order of the commission is unlawful or unreasonable. MCL 462.26(e); MSA 22.45(e). Michigan Bell argues that the full BIS payment is a reasonably necessary cost of doing business, because it is a cost-efficient method of obtaining centralized development of standardized systems. It would cost nearly eight times as much as its 1974 BIS payment of $1,525,000 to develop the projects on its own.

Even though centralized development may be a very good bargain, it does not necessarily follow that the commission is wrong in its treatment of BIS payments. Because the BIS contract is among

affiliated companies, it is not necessarily a result of arms-length bargaining, and the commission need not assume the cost allocation under the contract is fair. See *Michigan Bell Telephone Co v Public Service Comm,* 332 Mich 7; 50 NW2d 826 (1952). Charges for BIS based on the relative size of Michigan Bell compared to other operating companies may not reflect the relative benefit of BIS to Michigan Bell compared to the other operating companies. To the extent that other operating companies benefit more by implementing more projects than Michigan Bell, Michigan Bell's ratepayers will be subsidizing the operations of other companies. The commission's determination that Michigan Bell was not receiving its money's worth is supported by the record, which indicates that Michigan Bell paid $1,525,000 for projects worth only $329,000 based on its pro rata share cost. It was therefore not unreasonable for the commission to allow as reasonable expenses the costs of only those projects which Michigan Bell actually implements.

### III STATE INCOME TAX RESERVE

For the years 1970–1975, Michigan Bell's rates were calculated using straight-line depreciation, but its state income tax obligation was calculated using accelerated depreciation. As a consequence, the amount Michigan Bell collected in rates for income tax liability was greater than the amount of income tax paid. Since accelerated depreciation defers, not eliminates, income tax liability, the excess collected from ratepayers for income tax was accumulated as a state income tax reserve. When the state corporate income tax was cancelled January 1, 1976, Michigan Bell's anticipated obligation to eventually pay as state income tax its

reserve of $24,794,000 was also cancelled. As a consequence, Michigan Bell reaped an unanticipated windfall in the amount of the reserve.

In calculating the amount of rate increase needed by Michigan Bell in U-4820, the commission determined that the reserve should be amortized to income over a five-year period for ratemaking purposes. This means that Michigan Bell was determined to need $24,794,000 less income over the five years that it claimed it needed in its request for a rate increase. Since the Federal income tax rate is 48 per cent it takes nearly two dollars of revenue to yield one dollar of after-tax income. Therefore, Michigan Bell's rate increase would be approximately $48 million dollars less than requested over five years.

Michigan Bell argued in circuit court that only $12,889,000 should be amortized to income, and the remainder should be transferred to a reserve for Federal income taxes. This is because elimination of a state tax liability of $24,794,000 also eliminated an anticipated future Federal tax deduction of the same amount, increasing future Federal income tax liability by $11,905,000. The commission rejected this argument because it was not its practice to adjust the Federal income tax reserve to account for subsequent changes in Federal income tax liability. The circuit court affirmed because there was no showing that the Federal reserve was inadequate to provide for future Federal income tax liability.

On appeal, Michigan Bell has shifted its argument on the effect of Federal income tax liability on the state income tax reserve. It now argues that the commission's order is confiscatory, because it is being ordered to refund nearly $48 million to ratepayers even though it collected from

them only approximately $24 million for the state income tax reserve. The basic premise of its argument is that the $24 million reserve is pre-tax revenue, not aftertax income. In support of its premise, Michigan Bell relies upon testimony by its assistant comptroller, Mr. Abbott, as well as the proposition that, since state income tax is deductible in calculating Federal income tax liability, it was not necessary to collect nearly two dollars of revenue in order to accumulate one dollar of state income tax reserve. Since the reserve represents pre-tax revenue, as it is amortized to income for ratemaking purposes, Michigan Bell will have to pay Federal income tax of 48 per cent of the reserve, so that its actual income from the reserve is only 52 per cent of what the commission calculated, and consequently its revenue shortfall is approximately double what it ought to be.

Michigan Bell has not shown by clear and convincing evidence that the order of the commission is unlawful or unreasonable. MCL 462.26(e); MSA 22.45(e). Although the conclusion reached in its argument on appeal is the same as the conclusion reached in its arguments before the commission and circuit court, its argument on appeal is not only different from that presented below, but also inconsistent therewith. As a consequence, the record Michigan Bell created below not only does not support its argument on appeal, it tends to disprove its basic premise on appeal.

It was Mr. Abbott's theory that the commission amortized to income for ratemaking purposes approximately twice the income from the reserve it should have, not because the reserve was pre-tax revenue, but because Michigan Bell lost a Federal income tax deduction in the amount of the reserve when the state income tax was ended.

Money paid into the reserve had not yet been paid as state income tax, and was, therefore, not deductible for Federal income tax purposes. Since the reserve was not deducted for Federal income tax purposes, Michigan Bell's argument that it was not necessary to collect nearly two dollars of revenue in order to accumulate one dollar of reserve is wrong. Nor does the fact that the reserve had not previously been counted as income for ratemaking purposes mean that it was not counted as income for Federal income tax purposes. Since Mr. Abbott's testimony was inconsistent with Michigan Bell's present theory, lifting Mr. Abbott's conclusions out of context and quoting them as establishing Michigan Bell's basic premise is misleading.

Michigan Bell is not being required to "refund" anything to ratepayers. Rather, the commission has determined that the rate increase sought by Michigan Bell need not be as large as Michigan Bell requested, because of the state income tax reserve windfall. The money which Michigan Bell claims it is "refunding" to ratepayers already belongs to the ratepayers, and, absent a demonstration of error on the part of the commission, shall continue to belong to the ratepayers.

Affirmed. No costs, a public question.