GREAT LAKES STEEL DIVISION OF NATIONAL STEEL
CORPORATION v PUBLIC SERVICE COMMISSION

Docket Nos. 64528, 64529. Argued May 5, 1981 (Calendar No. 5).—
Decided December 23, 1982. Rehearing denied 417 Mich 1105.

The Great Lakes Steel Division of National Steel Corporation,
General Motors Corporation, and the Michigan Energy Users
Group brought an action in the Ingham Circuit Court against
the Public Service Commission, challenging orders of the com-
mission which granted partial and immediate rate relief in the
form of a flat rate surcharge to The Detroit Edison Company
pending a decision on Edison's petition for a permanent rate
increase and which denied the plaintiffs' motion for rehearing,
on the grounds that the granting of the surcharge was not
supported by competent, material, and substantial evidence on
the whole record in violation of the Administrative Procedures
Act and the constitution and that the orders were arbitrary,
unreasonable, capricious, and an abuse of discretion. The cir-
cuit court, Jack W. Warren, J., entered summary judgment for
the defendant, holding that the challenged orders were not
final orders within the meaning of the APA and not subject to
review under the competent, material, and substantial evidence
test of the APA or the constitution and that the surcharge was
not confiscatory, unreasonable, or violative of due process. The
Court of Appeals, T. M. Burns, P.J., and Cynar and Bach, JJ.,
reversed and remanded to the commission, holding that the
order for partial and immediate rate relief was a final order
within the meaning of the APA (Docket No. 78-5424). The
commission and Detroit Edison appeal.

In an opinion by Justice Ryan, joined by Chief Justice Fitz-
gerald and Justices Kavanagh, Williams, Coleman, and Levin,
the Supreme Court held:

An order of the Public Service Commission granting partial
and immediate rate relief to a public utility pending a decision
on the utility's request for a permanent rate increase is not a
final decision or order within the meaning of the Administra-

REFERENCES FOR POINTS IN HEADNOTES
[1] 64 Am Jur 2d, Public Utilities § 134.
[2-4] 64 Am Jur 2d, Public Utilities § 126.

tive Procedures Act or the constitution. Therefore, the standard of review is not whether the order is supported by competent, material, and substantial evidence on the whole record, but whether the rates are unlawful or unreasonable.

1. The Administrative Procedures Act and the constitution require that a final decision or order of an agency be supported by findings of fact and conclusions of law based on competent, material, and substantial evidence on the whole record. The word "final" takes its meaning from the context in which it is used in light of a common-sense appreciation of what the Legislature intended it to mean.

2. The Legislature did not intend an order for partial and immediate rate relief for a public utility to be a final order within the meaning of the Administrative Procedures Act. The statute which provides for interim relief, by its plain language, contemplates that such orders are to be entered only during the pendency of petitions for permanent rate changes. The orders are to be issued by the commission upon motion, in its discretion, pending submission of all proofs by interested parties on the permanent rate change. The language suggests that such an order is intended to be interlocutory, intermediate, and emergency relief, not required to be sustained at the time of issuance by the same quality of procedural process and substantive proof as required by the APA to support a "final" permanent rate order. The commission is required to conduct a less exhaustive hearing before granting interim relief, and its discretion in granting such relief is to be reviewed on a less demanding standard of review, whether the order was unlawful or unreasonable, rather than upon a standard of competent, material, and substantial evidence on the whole record.

3. An order fixing a rate, whether interlocutory or final, is immediately reviewable, and the unlawful or unreasonable test will apply. In this case, the availability of immediate review is sufficient to protect the interests of the utility and its customers and complies with the intent of the Legislature that the interim rate order be subject to prompt judicial scrutiny. Because the Court of Appeals failed to determine whether the commission's order was valid under the unlawful or unreasonable test, the case is remanded to that Court for consideration of the plaintiffs' appeal under that standard.

Justice Levin, concurring, agreed that an order of the Public Service Commission granting partial and immediate relief is not a final decision or order within the meaning of the Administrative Procedures Act, but said that it is not necessary to reach the question whether such an order is a final decision of

an administrative agency within the meaning of the constitution requiring support by competent, material, and substantial evidence on the whole record. The question whether the public utility statutes require an interim rate relief order to be supported by competent, material, and substantial evidence on the whole record made before its entry is not presented by this appeal. When it is presented, a conclusion that such support is required would avoid the need to consider the constitutional question.

Reversed and remanded.

94 Mich App 694; 290 NW2d 54 (1980) reversed.

OPINION OF THE COURT

1. PUBLIC UTILITIES — ADMINISTRATIVE LAW — INTERIM RATE INCREASES — FINAL ORDERS.

An order of the Public Service Commission granting partial and immediate rate relief to a public utility pending a decision on the utility's request for a permanent rate increase is not a final decision or order within the meaning of the Administrative Procedures Act or the constitution (Const 1963, art 6, § 28; MCL 460.6a; MSA 22.13[6a]).

2. PUBLIC UTILITIES — ADMINISTRATIVE LAW — INTERIM RATE INCREASES — STANDARD OF REVIEW.

A decision or order of the Public Service Commission granting interim rate relief need not be supported by findings of fact and conclusions of law based on competent, material, and substantial evidence on the whole record, but is to be reviewed under the less demanding standard whether the decision or order was unlawful or unreasonable (Const 1963, art 6, § 28; MCL 460.6a, 462.26[a]; MSA 22.13[6a], 22.45[a]).

3. PUBLIC UTILITIES — ADMINISTRATIVE LAW — RATES — APPEAL.

An order fixing a rate to be charged by a public utility, whether interlocutory or final, is, by statute, immediately reviewable to determine whether it is unlawful or unreasonable (MCL 462.26[a]; MSA 22.45[a]).

CONCURRING OPINION BY LEVIN, J.

4. PUBLIC UTILITIES — INTERIM RATE INCREASES — APPEAL — STANDARD OF REVIEW.

*The Supreme Court should not express an opinion whether an order granting partial and immediate rate relief to a public utility by the Public Service Commission is a final decision within the meaning of the constitutional provision which re-*

*quires support of a final decision by competent, material, and substantial evidence on the whole record in a case in which that question need not be decided; in a proper case, if the statutory standard of the public service commission act is construed to be as high as the constitutional standard, the constitutional question need not be reached or decided (Const 1963, art 6, § 28; MCL 460.6a; MSA 22.13[6a]).*

*Hill, Lewis, Adams, Goodrich & Tait* (by *Douglas H. West* and *Robert A. W. Strong)* for Great Lakes Steel.

*John M. Veale* for General Motors Corporation.

*Albert J. Thorburn* for the Michigan Energy Users Group.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Arthur E. D'Hondt,* Assistant Attorney General, for the Public Service Commission.

*Leon S. Cohan* and *David L. Clark* for The Detroit Edison Company.

Amicus Curiae:

*Conner, Harbour & Dew* (by *Pat D. Conner)* and the Dow Chemical Company, Michigan Division— Legal Department (by *Ronald L. Davis)* for the Dow Chemical Company.

RYAN, J. In this public utility rate case, we address a relatively simple, but important, procedural question:

Whether an order of the Michigan Public Service Commission granting "partial and immediate" rate relief under MCL 460.6a; MSA 22.13(6a), is a "final decision or order" within the meaning of the Administrative Procedures Act and Const 1963, art 6, § 28.

We hold that it is not, reverse the judgment of the Court of Appeals, and remand the matter to that Court for further consideration.

I

In July of 1977, The Detroit Edison Company filed an application with the Michigan Public Service Commission for a permanent rate increase of 122.3 million dollars. Its petition was accompanied by a written motion for a "partial and immediate" rate increase of 69.9 million dollars.

A request for interim rate relief, as a petition for a "partial and immediate" rate increase is generally known in public utility litigation, is specifically authorized by MCL 460.6a; MSA 22.13(6a), and is intended to enable a utility to obtain a partial and immediate rate order to meet its increased costs during the time its petition for a permanent rate increase is being contested before the commission and considered by it.[1]

---

[1] We burden the opinion with the reproduction of the entire text of § 6a because our resolution of the stated issue requires an appreciation of the context in which certain language of the section is used.

"(1) When any finding or order is sought by any gas, telephone or electric utility to increase its rates and charges or to alter, change or amend any rate or rate schedules, the effect of which will be to increase the cost of services to its customers, notice shall be given within the service area to be affected. When such utility shall have placed in evidence facts relied upon to support its petition or application to so increase its rates and charges, or to so alter, change or amend any rate or rate schedules, the commission, *pending the submission of all proofs by any interested parties, may in its discretion and upon written motion by such utility make a finding and enter an order granting partial and immediate relief,* after first having given notice to the interested parties within the service area to be affected in the manner ordered by the commission, and after having afforded to such interested parties reasonable opportunity for a full and complete hearing: Provided, That no such finding or order shall be authorized or approved ex parte, nor until the commission's technical staff has made an investigation and report: And provided further, That any alteration or amendment in rates or rate schedules applied for by any public utility which will result in no increase in

Detroit Edison began the presentation of its case before the commission on September 26, 1977, after first giving notice to the public and interested parties within the service area affected, as is required by subsection (1) of § 6a. The presentation and cross-examination of Edison's case took approximately 40 days of hearing and concluded on November 29, 1977. Some three weeks later, on December 21, 1977, the commission filed its staff report recommending that Edison be granted a partial and immediate rate increase of 37.9 million dollars. A hearing on the motion for the interim relief was held on January 4, 1978, at which time the commission's staff report was presented, and its sponsor, Charles W. Geyer, testified in support of the recommendation and was cross-examined. The only other testimony had been offered by Edison's witness, Richard C. Viinikainen. All par-

the cost of service to its customers may be authorized and approved without any notice or hearing." (Emphasis added.)

"(2) The commission shall adopt such rules and procedures for the filing, investigation and hearing of petitions or applications to increase or decrease utility rates and charges as the commission finds necessary or appropriate to enable it to reach a final decision with respect to such petitions or applications within a period of 9 months from the filing thereof. This section or any other law does not prohibit the incorporation of fuel or purchase gas adjustment clauses in rate schedules.

"(3) If a final decision has not been reached upon a petition or application to increase or decrease utility rates within the 9-month period, the commission shall give priority to such case and shall take such other action as it finds necessary or appropriate to expedite a final decision. If the commission fails to reach a final decision with respect to a petition or application to increase or decrease utility rates within the 9-month period following the filing of such petition or application, the commission, within 15 days, shall submit a written report to the governor and to the president of the senate and the speaker of the house of representatives stating the reasons a decision was not reached within the 9-month period, and the actions being taken to expedite such decision. The commission shall submit a further report upon reaching a final decision providing full details with respect to the conduct of the case, including the time required for issuance of the commission's decision following the conclusion of hearings."

ties, including the plaintiffs, were afforded the opportunity to file briefs and make oral argument concerning the interim rate request. The plaintiffs were not allowed, however, to present any evidence, it being the judgment of the hearing officer that they were not entitled to do so. That ruling was later confirmed by the commission, which held that § 6a "does not provide for submission of evidence by intervenors prior to the commission's ruling on interim relief".[2]

By its February 17, 1978, order granting in part the motion for partial and immediate revenue relief, the commission granted Edison an immediate revenue increase of 35.4 million dollars which it found to be necessary to protect Edison from "harmful and unreasonable loss of revenue" while the petition for permanent rate relief was under consideration. The commission ordered that the 35.4 million dollars be produced by a uniform surcharge to all of the utility's customers of .96 mills per kilowatt hour. The order required that Edison post a bond sufficient to cover a possible refund to its utility customers, in the event the interim rate increase was later determined to be excessive.

The plaintiffs, industrial energy users, filed an application for rehearing before the commission on March 8, 1978. They registered no objection to the amount of the rate increase, but strongly protested the commission's formula for producing the revenue. The plaintiffs claimed that a flat uniform surcharge to all classes of utility customers was an

[2] Commission order of February 17, 1978, granting in part motion for partial and immediate revenue relief.

inequitable distribution of the interim rate burden, and that each of the classes of the utility's customers should be required to absorb only that percentage of the interim rate increase which corresponds with the permanent rate assigned to each.

Under the existing rate structure, the industrial plaintiffs paid lower rates per kwh than did residential customers. The flat rate surcharge authorized by the interim order meant that industrial users would be paying a greater proportion of the rate increase than if the surcharge were a percentage increase of previous rates. In fact, the .96-mill surcharge increased the rates to the domestic customer class approximately 2.15%, to the commercial class rates approximately 1.99%, and to the industrial class of users about 3%. While the percentage differential is small, it reflects a substantial sum of money for the industrial users. The plaintiffs, for example, allege that they paid $138,-000 more per month under the flat rate surcharge of the interim order than they would have paid had an equal percentage increase been imposed on all customer classes.

Although it is this rate design dispute which is at the heart of this litigation, we do not now address the matter further because our disposition of this appeal directs that the issue be considered on remand by the Court of Appeals.

The industrial users' request for rehearing was denied, and on September 28, 1978, the commission issued a final order dissolving a temporary rate increase and granting Edison a permanent revenue increase in excess of $83,792,000 annu-

ally.[3] No refund of any collections under the partial and immediate rate increase order was ordered and no appeal of any provision of the final order was taken by any party.

The plaintiffs filed suit in the Ingham Circuit Court attacking the commission's orders granting partial and immediate relief and denying the utility users' motion for rehearing. The first count of the plaintiffs' complaint alleged a violation of § 85 of the Administrative Procedures Act, MCL 24.285; MSA 3.560(185), in that the flat rate surcharge was not supported by "competent, material and substantial evidence on the record as a whole or any portion thereof". The second count of the complaint alleged a violation of Const 1963, art 6, § 28, in that the flat rate surcharge was not supported by "competent, material and substantial evidence on the whole record" and that "in fact there was no evidence to support the rate design" of the order. The third count, apparently based on MCL 462.26; MSA 22.45, alleged that the challenged interim rate orders were "arbitrary, unreasonable, capricious, an abuse of discretion and unlawful".[4]

---

[3] The plaintiffs-appellees point out that upon issuance of its September 28, 1978, order, "[t]he record in this case was not closed, but left open to consider further rate increases as a result of 'the system availability incentive provisions and implementing the "other operations and maintenance" expense indexing system'." Despite the record being "left open" for that purpose, we are satisfied that, for purposes of this litigation, the September 28 order was a "final decision or order" under § 85 of the APA. In any event, that point is not in contest.

[4] MCL 462.26; MSA 22.45, in pertinent part, provides:

"(a) Any common carrier or other party in interest, being dissatisfied with any order of the commission fixing any rate or rates, fares, charges, classifications, joint rate or rates, or any order fixing any regulations, practices or services, may within 30 days from the issuance of such order and notice thereof commence an action in the circuit court in chancery for the county of Ingham, against the commission as defendant to vacate and set aside any such order on

In an opinion dated October 24, 1978, the learned circuit judge held that the challenged orders were not "final" within the meaning of § 85 of the APA, and thus not subject to review under the "competent, material and substantial evidence" test of that section, or of Const 1963, art 6, § 28. The circuit judge then considered and rejected the plaintiffs' claim under MCL 462.26; MSA 22.45 that the rate design of the partial and immediate rate increase was confiscatory, unreasonable, or violative of due process. Upon a stipulation by the parties that the trial court's opinion disposed of all the issues in the case, summary judgment was entered in favor of the commission on December 13, 1978.

On appeal, the Court of Appeals held that the commission's order for partial and immediate rate relief was a "final decision or order" within the meaning of § 85 of the APA, reversed the judgment of the circuit court, and remanded to the commission for further proceedings to be conducted in compliance with § 85 of the APA.[5] The Court of Appeals did not decide whether the circuit judge was correct in holding that the flat rate surcharge was not "unlawful or unreasonable" within the meaning of MCL 462.26; MSA 22.45, resolution of that question being unnecessary in view of its decision concerning the applicability of § 85 of the APA.

We granted leave to appeal and directed the

the ground that the rate or rates, fares, charges, classifications, joint rate or rates fixed are unlawful or unreasonable, or that any such regulation, practice or service fixed in such order is unreasonable; in which suit the commission shall be served with a subpoena and a copy of the complaint."

[5] *Great Lakes Steel Division of National Steel Corp v Public Service Comm,* 94 Mich App 694; 290 NW2d 54 (1980).

parties to include among the issues to be briefed whether the commission's order granting partial and immediate relief is a "final decision or order" subject to the requirements of § 85 of the APA and Const 1963, art 6, § 28.

II

The significance of the stated question is that if an order for a "partial and immediate" rate increase, pursuant to § 6a, is a "final decision or order of an agency" under § 85 of the APA, it must be supported by findings of fact and conclusions of law in accordance with the fullness of form and content mandated by § 85, and "supported by and in accordance with * * * competent, material and substantial evidence" on the "record as a whole". Similarly, Const 1963, art 6, § 28 requires that "[a]ll final decisions * * * of any administrative * * * agency [be] supported by competent, material and substantial evidence on the whole record".

A

The plaintiffs contend that the detailed findings of fact and conclusions of law required by § 85 of the APA to support a "final decision or order" were not made by the commission in this case and that, in any event, the interim rate relief order is not supported by competent, material and substantial evidence on the whole record.

We do not decide whether the interim order, and particularly the rate design, has adequate evidentiary support in the record, however, because we confine our holding to the determination that the

partial and immediate rate order is not a "final order" within the meaning of § 85 of the APA and Const 1963, art 6, § 28, and thus need not comply with their requirements.

In concluding that the commission's order is not a "final decision or order" within the meaning of § 85, we recognize that the word "final", in the context of appealability, is an "abstruse and infinitely uncertain term".[6] Its meaning, for purposes of this litigation, cannot be determined merely by examining its etymology and settling upon an acceptable dictionary definition as though the word were an adjective disassociated from any specific context. The expression "final decision or order" takes its meaning, in the usage involved in this case, from the context in which it is employed in § 6a and in light of a common-sense appreciation of what the Legislature intended the idiom to mean, had legislative thought been given to the specific question before us.

The plaintiffs argue that the finality of any rate decision should be determined by the effect of the commission's order. Since the order challenged here had the immediate and significant effect of requiring plaintiffs to pay a substantially higher electric rate, with the concomitant loss of interest of some 20% per annum on those funds, or suffer the shutoff of their electric power, it is claimed that the order should have been immediately ap-

---

[6] *Will v United States,* 389 US 90, 108; 88 S Ct 269; 19 L Ed 2d 305 (1967) (Black, J., *concurring*).

" 'Final' is not a clear one-purpose word; it is slithery, tricky. It does not have a meaning constant in all contexts. What was said as to 'final' orders a half century ago still holds: 'The cases, it must be conceded, are not altogether harmonious.' There is still too little finality about 'finality'." *United States v 243.22 Acres of Land,* 129 F2d 678, 680 (CA 2, 1942).

pealable as of right under § 85 of the APA, and thus must have been "final".

We think there are two answers to that contention:

Firstly, without deciding the matter, we observe that it appears unlikely that review of the commission's permanent rate order in this case would not have provided an adequate remedy in the event the partial and immediate order later proved to be inappropriate, since the interim order required Edison to post bond to guarantee a source for refunds if the order was later found to be excessive.[7] Any "appropriate refunds", which might later be thought to have been warranted, might well have included a refund with interest for the period of time Edison held any funds that it should not have collected. This Court has recognized, in dicta, the propriety of a full refund, with interest, if a regulated utility collects funds under a preliminary injunction ultimately held to be unlawful. *Michigan Consolidated Gas Co v Public Service Comm,* 389 Mich 624, 640-643; 209 NW2d 210 (1973); see also *General Telephone Co of Michigan v Public Service Comm,* 341 Mich 620, 632-633; 67 NW2d 882 (1954). There appears to be no logical reason why the commission may not predicate the grant of immediate rate relief on a bond to insure refunds with interest if requested to do so, and if appropriate.

Secondly, the order for partial and immediate

[7] "B. The Detroit Edison Company shall file with the commission a suitable bond to ensure that appropriate refunds will be made to its customers in the event that the final order in this case provides for a lesser amount than the $35,415,000 annual revenue increase herein granted."

relief *is* immediately reviewable as of right, without qualifying as a "final decision or order".

The plaintiffs argue that a "final" order is appealable as of right; that orders of the MPSC fixing a rate are appealable as of right, *Attorney General v Michigan Public Service Comm,* 392 Mich 660; 221 NW2d 299 (1974); MCL 462.26; MSA 22.45; and that, therefore, the order setting partial and immediate rates in this case is a "final" order for APA purposes. The invalidity of that apparent effort at syllogistic reasoning, however, is in the fact that an order fixing a rate is immediately appealable not because it is final, but because a specific statute grants a right to appeal from *any* rate order, whether interlocutory or final. MCL 462.26(a); MSA 22.45(a) provides:

"Any common carrier or other party in interest, being dissatisfied with *any order* of the commission fixing any rate or rates, fares, charges, classifications, joint rate or rates, or any order fixing any regulations, practices or services, may within 30 days from the issuance of such an order and notice thereof commence an action in the circuit court in chancery for the county of Ingham, against the commission as defendant to vacate and set aside any such order on the ground that the rate or rates, fares, charges, classifications, joint rate or rates fixed are unlawful or unreasonable." (Emphasis added.)

The Court of Appeals reasoned that a partial and immediate order is "final" from the perspective of the utility because it limits the utility's revenue until a new rate structure is approved and that "[f]or the sake of consistency, an interim order should not be final as against a utility which may not secure retroactive rates at a later date and not final for another aggrieved party which

seeks relief. That haphazard application of § 85
would only confuse the commission's operations".
94 Mich App 694, 700; 290 NW2d 54 (1980). In the
sense in which the notion of finality is used here,
we find nothing inherently inconsistent with an
order being "final" as to one party but not an-
other, or for one purpose and not another. More
important, an order is not necessarily "final" as to
the utility simply because it has immediate and
irreparable effect. Certainly, it is true that if the
APA applied, an aggrieved *utility* might well ob-
tain leave to appeal on the basis of the fact that
the proscription against retroactive ratemaking
makes appeal from the permanent order an inade-
quate remedy. MCL 24.301; MSA 3.560(201). But
that is not the case before us. In any event,
irreparable harm to a utility, in the sense of a
prohibition against retroactive ratemaking, alone
cannot make an otherwise interlocutory order
"final" within the meaning of § 85 of the APA if
that were not the legislative intention.

B

There are several reasons which suggest that it
is not the intention of the Legislature that a § 6a
order for partial and immediate relief is a "final
order" as that expression is employed in § 85 of
the APA and Const 1963, art 6, § 28.

The text of § 6a, which is set forth in footnote 1,
is organized into three subsections. Only subsec-
tion (1) deals with the subject of partial and imme-
diate rate orders and by its plain language con-
templates that such an order is to be entered only
during the pendency of the petition for a perma-
nent rate change. The Legislature declared in
subsection (1) (see fn 1) that an interim order is to
be issued "upon written motion" and in the "dis-

cretion" of the commission, and is to be issued "pending the submission of all proofs by any interested parties" on the permanent rate change request. Both the language used to describe the conditions for the issuance of an interim order and its secondary and incidental place in the context in which it is found in subsection (1) suggests that the "partial and immediate" order is intended to be interlocutory, intermediate, and emergency relief, not required to be sustained at the time of issuance by the same quality of procedural process and substantive proof as is required by § 85 to support a "final" permanent rate order.

In subsections (2) and (3) of § 6a there is reference to a "final decision" five times. There is no reference to a "final decision" at all in the subsection (1) language dealing with a partial and immediate rate order, suggesting strongly that partial and immediate relief is something other than a "final decision". The language of subsections (2) and (3) calls for the adoption of "rules and procedures" for processing utility rate change requests to enable the commission to "reach a *final decision* * * * within a period of 9 months from the filing thereof". That language plainly refers to a petition for permanent relief, and contrasts sharply with the subsection (1) authorization for an "immediate" rate order "pending the submission of all proofs" which is not described as a final decision, suggesting an intended distinction. While subsection (1) does provide that interested parties are to be afforded a "full and complete hearing" on the motion for partial and immediate relief, the context of the provision forcefully suggests that it was the intent of the Legislature to provide an expedient, more summary, and less exhaustive hearing for the issuance of an interim rate order than for

the issuance of a final order.[8] If the more formal and detailed requirements of § 85 of the APA for a "final decision or order" were applicable, interested parties would be entitled to "an opportunity to present evidence and argument on issues of fact". MCL 24.272(3); MSA 3.560(172)(3). While such a requirement would be ideal, it would convert the motion-predicated interim rate relief request into a full-blown petition proceeding which would be procedurally indistinguishable from the permanent rate request procedures which § 6a contemplates may last for as long as nine months.

Because in our judgment the commission is required to conduct a less exhaustive hearing before granting partial and immediate rate relief "pending the submission of all proofs by interested parties", its discretion in granting such relief is to be reviewed upon a less demanding standard of review: the "unlawful or unreasonable" test of MCL 462.26(a); MSA 22.45(a). As we have said, part of the significance of the claim that a "partial and immediate" rate order is a final decision is the fact that, by definition, a final decision must be based upon "competent, substantial and material evidence" on the whole record. Const 1963, art 6, § 28. Section 6a(1) expressly provides, however, that the decision upon the "motion" for interim relief is to be made "pending submission of all proofs" and, therefore, necessarily before "the whole record" exists. It is obvious that if the interim order is to be entered before the whole record is made, it cannot be reviewable upon a standard of "competent, material and substantial evidence on the whole record".

___

[8] It is not as though the hearing for interim relief in this case was cursory. The "partial and immediate" rate order granted in this case was issued six months after the written motion was filed. The proceedings relating to it are reflected in 5,675 pages of transcript and 61 exhibits.

We are satisfied that the availability of immediate review under the "unlawful or unreasonable" test of § 26 is sufficient to protect the interests of both the utilities and utility customers alike and, at the same time, comply with the intent of the Legislature that the interim rate order be subject to prompt judicial scrutiny. Further protection, of course, is provided by way of an appeal from any final order of the commission which fails to direct payment of refunds when they are justified. If the parties had proposed the inclusion of such a remedy in the final order in this case, and the commission denied the payment of any refunds warranted by the facts, the plaintiffs could have appealed.

Finally, we must disagree with the fear expressed by the Court of Appeals that "the entire review scheme would be rendered a nullity" because the entry of "final" orders would render appeals from partial and immediate orders moot. While appeals by *utilities* of interim orders may be mooted because of a superseding final order and the ban against retroactive ratemaking, that is not always the case. See *Michigan Bell Telephone Co v Public Service Comm,* 85 Mich App 163, 165-167; 270 NW2d 546 (1978), *lv den* 405 Mich 822 (1979), which, while not involving an interim order, addressed the same mootness argument. In any event, as to the plaintiffs in this case, it is clear that our determination that the partial and immediate rate order in question is not a "final decision or order" does not moot their appeal as of right under § 26 as embodied in count III of their amended complaint.

The circuit judge considered and rejected plaintiffs' count III claim that the partial and immediate order was "unlawful or unreasonable". Because of its disposition of the case, the Court of

Appeals failed to address this issue and, thus, never reached the crucial dispute between the parties: whether the rate design of the interim order was valid.

We therefore reverse the decision of the Court of Appeals and remand the matter to that Court for consideration of plaintiffs' appeal under § 26. We do not retain jurisdiction.

No costs. A public question is involved.

FITZGERALD, C.J., and KAVANAGH, WILLIAMS, COLEMAN, and LEVIN, JJ., concurred with RYAN, J.

LEVIN, J. *(concurring).* I have signed the opinion of the Court because I agree, for the reasons therein set forth, that an order of the Public Service Commission granting "partial and immediate relief" pursuant to § 6a[1] of the public service commission act[2] is not "a final decision or order" within the meaning of § 101 of the Administrative Procedures Act of 1969.[3]

---

[1] "When any finding or order is sought by any gas, telephone or electric utility to increase its rates and charges or to alter, change or amend any rate or rate schedules, the effect of which will be to increase the cost of services to its customers, notice shall be given within the service area to be affected. When such utility shall have placed in evidence facts relied upon to support its petition or application to so increase its rates and charges, or to so alter, change or amend any rate or rate schedules, the commission, pending the submission of all proofs by any interested parties, may in its discretion and upon written motion by such utility make a finding and enter an order granting *partial and immediate relief,* after first having given notice to the interested parties within the service area to be affected in the manner ordered by the commission, and after having afforded to such interested parties reasonable opportunity for a full and complete hearing: Provided, That no such finding or order shall be authorized or approved ex parte, nor until the commission's technical staff has made an investigation and report: And provided further, That any alteration or amendment in rates or rate schedules applied for by any public utility which will result in no increase in the cost of service to its customers may be authorized and approved without any notice or hearing." (Emphasis supplied.) MCL 460.6a; MSA 22.13(6a).

[2] 1939 PA 3. MCL 460.1; MSA 22.13(1).

[3] "When a person has exhausted all administrative remedies

The opinion goes on to state that an order for partial and immediate relief is not a final decision within the meaning of Const 1963, art 6, § 28, requiring that a final decision of an administrative agency be "supported by competent, material and substantial evidence on the whole record".[4] That statement, while possibly helpful on remand, is not necessary to decision.

Courts generally seek to avoid decisions on constitutional questions.

While this Court decides that the order for partial and immediate relief is not appealable pursuant to the Administrative Procedures Act, it holds that it is appealable pursuant to § 26 of a 1909 utility regulation act for a determination whether the partial and immediate rate order is "unlawful or unreasonable".[5]

I am reluctant to conclude that an order for partial and immediate relief need not be supported by competent, material and substantial evidence on the whole record. Section 6a provides that an order for partial and immediate relief can be issued only when a utility has placed in evidence the facts relied on to support its petition and has

available within an agency, and is aggrieved by a *final decision or order* in a contested case, whether such decision or order is affirmative or negative in form, the decision or order is subject to direct review, by the courts as provided by law. Exhaustion of administrative remedies does not require the filing of a motion or application for rehearing or reconsideration unless the agency rules require the filing before judicial review is sought. A preliminary, procedural or intermediate agency action or ruling is not immediately reviewable, except that the court may grant leave for review of such action if review of the agency's final decision or order would not provide an adequate remedy." (Emphasis supplied.) MCL 24.301; MSA 3.560(201).

[4] "This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record." Const 1963, art 6, § 28.

[5] MCL 462.26; MSA 22.45.

afforded interested parties a reasonable opportunity for a full and complete hearing and not before the commission's technical staff has made an investigation and report.

The question whether an order for partial and immediate relief is a final decision within the meaning of the Administrative Procedures Act depends, as set forth in the opinion of the Court, on legislative intent. This Court might conclude, as a matter of construction of §§ 6a and 26, that the Legislature intended that an order for partial and immediate rate relief be supported by competent, material and substantial evidence on the whole record. If this Court as a matter of statutory construction were so to conclude, there would be no need—the statutory standard being as high as the constitutional standard—to consider whether the constitution requires a higher standard than the public utilities statutes require.

The question whether the public utility statutes, in requiring evidentiary support, require that the whole record made before the entry of an interim rate relief order support any such order by competent, material and substantial evidence, is not presented by this appeal. This Court should avoid expressing an opinion on whether the constitutional standard applies to an interim rate relief order until it first determines that the statutes require a lesser standard. No such determination has been made and the constitutional question should not be discussed at this time.

While the term "final decision" appears both in the Administrative Procedures Act and in the constitution it does not follow that those words were used in the same sense in both documents. The intent of the Legislature and of the framers of the constitution and the people in using the same

words may not be the same. Just as different persons use words differently, especially in different contexts, so too the Legislature and the framers and people may have used these words differently and have intended different meanings.

The structure, context and purpose of legislation is relatively narrow and focused and substantially different from the structure, focus and, indeed, the function of a constitution.

The opinion of the Court adverts to Judge Frank's observation that "final" "does not have a meaning constant in all contexts", and that there is still "too little finality about 'finality'", *United States v 243.22 Acres of Land,* 129 F2d 678, 680 (CA 2, 1942), but fails to follow that admonition.

The bulk of the reasoning of the opinion of the Court is devoted to the statutory issue of legislative intent and very little is said regarding the intent of the framers and people. This issue of constitutional law is treated almost in passing with the less than obvious observation that "[i]t is obvious that if the interim order is to be entered before the whole record is made, it cannot be reviewable upon a standard of 'competent, material and substantial evidence on the whole record' ".[6] But the whole record for an interim rate relief order could be the record made before it is entered and need not be regarded as encompassing the record not yet made with regard to the permanent order.

One cannot visualize all the contexts in which may arise the question of whether the constitutional standard governs where a partial, interim or temporary order granting some immediate relief has been entered. The question should not be addressed until it is presented in a case in which

---

[6] *Ante,* p 182.

the record, made before the order was entered, does not support the order with competent, material and substantial evidence and the statute does not require such evidentiary support. Then only need the constitutional question be reached and decided.

RILEY, J., took no part in the decision of this case.