Commonwealth of Pennsylvania, Pennsylvania Public Utility Commission *v.* D'Agata National Trucking Co., Appellant. C & R Transport, Inc., Intervening Appellee.

Argued February 4, 1976, before President Judge BOWMAN and Judge CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Alan Kahn,* with him, of counsel, *Kahn, Bushman, Rosenberg & Weisberg,* for appellant.

*R. Knickerbocker Smith, Jr.,* Assistant Counsel, with him *Alfred N. Lowenstein,* Assistant Counsel, and *Edward J. Morris,* Counsel, for appellee.

*Emanuel G. Weiss,* with him, of counsel, *Mark Charleston,* for intervening appellee.

OPINION BY JUDGE KRAMER, July 1, 1976:

This is an appeal by D'Agata National Trucking Company from an order of the Pennsylvania Public Utility Commission (PUC), which granted a certificate of public convenience to C & R Transport, Inc. The only issue is whether the Commission's adjudication is supported by substantial evidence. We hold that it is and affirm.

On June 17, 1974, C & R Transport, Inc. filed an application with the PUC requesting the grant of certificate of public convenience authorizing C & R:

"To transport, *as a common carrier,* malt, brewed beverages and advertising materials, between points in the City and County of Philadelphia, and from points in the said City and County to points in Penn-

sylvania, and the return of empty containers and pallets, and malt, brewed beverages and advertising materials, between points in the City of Norristown, Montgomery County, and from points in the said City, to points in Pennsylvania, and the return of empty containers and pallets.'' (Emphasis added.)

C & R's application contained the following provision:

"11. If the evidence presented in support of this application shows that applicant, although applying for a certificate of public convenience as a common carrier, would be entitled to a permit as a contract carrier, or if applying for a permit, would be entitled to a certificate, as aforesaid, applicant agrees that the application may be considered by the Commission to be for the appropriate form of authority."

Protests were filed with the PUC by many trucking companies including D'Agata. Hearings on C & R's application were held on September 27, 1974, November 19, 1974 and January 16, 1974. On May 28, 1975 the PUC, in a short-form order, granted C & R the following rights:

"To transport, *as a contract carrier,* for C. Schmidt & Sons, Inc., malt, brewed beverages and advertising materials, between points in the City and County of Philadelphia and from points in the said City and County to points in Pennsylvania and vice versa, and the return of empty containers and pallets to point of origin.

"To transport, *as a contract carrier,* for C. Schmidt & Sons, Inc., malt, brewed beverages and advertising materials, between points in the City of Norristown, Montgomery County, and from points in said city, to points in Pennsylvania, and the return of empty containers and pallets to point of origin." (Emphasis added.)

D'Agata and three other protestants filed petitions for reopening, rehearing and reconsideration of the

May 28, 1975 order, but the PUC denied these petitions in an order entered August 11, 1975. D'Agata appealed to this Court on September 10, 1975. C & R filed a petition to intervene which was granted on October 23, 1975. On October 1, 1975 the PUC issued its long-form order affirming its prior grant of contract carrier authority to C & R. The PUC's long-form order contained the following pertinent findings of fact:

"1. Applicant is a Pennsylvania corporation based at 1345 North Mascher Street, Philadelphia, Pennsylvania.

"2. Applicant is a new corporation with total capital of $2,500, $500 of which is debt. Officers of the corporation, however, are able and willing to provide $20,000 to $25,000 additional money in the form of shareholders loans.

"3. Applicant has arranged for the leasing of its initial equipment consisting of 10 tractors and 15 trailers from the KMA Leasing Company, Inc., on notice of one to two weeks with more equipment to follow as required. Applicant has exclusive rights to these vehicles for four years.

"4. Officers of applicant have extensive experience in the administration and operation of trucking companies.

"5. Applicant has established that it is fit, willing and able to properly provide the proposed service.

"6. Support for this application came from only one shipper, C. Schmidt & Sons, Inc. of Philadelphia.

. . . .

"12. Schmidt contemplates that the traffic tendered to applicant will come out of Schmidt's existing private carrier fleet and not from over-flow traffic that presently is handled by common carriers. Consequently, common carriers who primarily handle

Schmidt's over-flow traffic should not lose business as a result of approval of this application.

. . . .

"20. The record indicates that applicant, as a contract carrier, will fill a need not presently met by existing common carriers.

"21. The record is devoid of evidence that the granting of this application will have an adverse economic effect on existing common carriers."

In its brief to this Court, D'Agata argues (1) that there is no evidence in the record to support the PUC's finding that C & R is fit, willing and able to provide the proposed service; (2) that there is no evidence in the record of a public need for the service authorized by the PUC; and (3) that the PUC's finding that the grant of this application will not cause the protestant carriers to lose business is directly contrary to the evidence.[1]

Our scope of review is for error of law, violation of constitutional rights or lack of evidence to support the Commission's order.[2] The PUC's exercise of its discretion must be accepted by this Court unless its action is totally without support in the record, or is based on an error of law, or is unconstitutional.[3]

---

[1] D'Agata also raises an additional issue which we find to be frivolous. D'Agata argues that the PUC erred by granting C & R operating rights from Norristown, because the record indicates that Schmidt planned to close its Norristown plant. This alleged error is self-curing because C & R's authority is limited to contract carriage for Schmidt. If Schmidt has closed or in the future closes its Norristown plant, then C & R will not have any business in Norristown.

[2] Section 1107 of the Public Utility Law, Act of May 28, 1937, P.L. 1053, *as amended*, 66 P.S. §1437.

[3] *Philadelphia Suburban Water Company v. Pennsylvania Public Utility Commission*, 425 Pa. 501, 229 A.2d 748 (1967).

# 370

Although D'Agata's brief argues that there is *no evidence* in the record to support the PUC's adjudication, counsel for D'Agata was forced, at the argument before this Court, to amend this somewhat absolute argument and admit that there is, in fact, *some evidence* in the record to support the adjudication. We must determine, therefore, whether the evidence in the record is substantial evidence. Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[4]

The PUC's findings Nos. 4 and 5, quoted above, are adequately supported in the record. D'Agata's argument that C & R could not be "fit, willing and able," because it had no equipment, is clearly without merit. C & R had a contingent lease for equipment, and that is all that could be expected prior to the time C & R actually received operating authority.

D'Agata argues that there is no evidence in the record of a public need for the proposed service. This argument has no merit. The Public Utility Law does not require the PUC, in this type of case, to find a "necessity" or "public need" for the proposed service.[5] The PUC is required to consider the existing common carrier service available to the shipper, and if that service is satisfactory and adequate, whether the injection of a contract carrier in competition with the adequate common carrier service would be detrimental to the public interest and to the inherent advantages of common carriage by motor vehicle.[6] In this case the PUC found that existing

---

[4] *Dutchland Tours, Inc. v. Pennsylvania Public Utility Commission,* 19 Pa. Commonwealth Ct. 1, 337 A.2d 922 (1975).

[5] *See* Sections 801 and 804(b) of the Public Utility Law, 66 P.S. §§1301, 1304(b).

[6] *Coastal Tank Lines, Inc. v. Pennsylvania Public Utility Commission,* 189 Pa. Superior Ct. 53, 149 A.2d 581 (1959).

common carriers have proved unable to meet Schmidt's particular needs and decided that the proposed service would not be inimical to the public interest.

D'Agata argues that the PUC's finding No. 12, quoted above, is directly contrary to the evidence. We do not agree. Finding No. 12 is not couched in absolute terms such as "will not lose business"; rather it is couched in relative terms, *i.e.*, "should not lose business." Furthermore, the PUC, in its discussion, explained finding No. 12 by stating:

"[W]e find that common carriers who handle Schmidt's over-flow traffic should not lose *any substantial business* as a result of approval of this application." (Emphasis added.)

Finding No. 12, as qualified by the above-quoted language, is supported by substantial evidence.

We hold that the PUC's order is supported by substantial evidence and we therefore

### ORDER

AND Now, this 1st day of July, 1976, the order of the Pennsylvania Public Utility Commission, granting a certificate of public convenience to C & R Transport, Inc., is hereby affirmed.

Judge MENCER dissents.