Walter W. Cohen, Consumer Advocate, Petitioner v. Pennsylvania Public Utility Commission, Respondent. Pennsylvania Power Company, Intervenor.

Argued May 10, 1983, before President Judge CRUMLISH, JR. and Judges WILLIAMS, JR., CRAIG, MAC-PHAIL and DOYLE.

*Daniel Clearfield,* Assistant Consumer Advocate, with him *Walter W. Cohen,* Consumer Advocate, for petitioner.

*Julian S. Suffian,* Assistant Counsel, with him *Steven A. McClaren,* Deputy Chief Counsel, and *Charles F. Hoffman,* Chief Counsel, for respondent.

*Alan L. Reed,* with him *Thomas P. Gadsen* and *Margaret B. Dardess* and of counsel: *James R. Edger-*

ly, General Counsel, and *Stephen L. Feld, Morgan, Lewis & Bockius,* for intervenor, Pennsylvania Power Company.

*Albert D. Brandon,* for Amicus Curia, Ralph D. Pratt.

OPINION BY JUDGE DOYLE, August 15, 1983:

Walter W. Cohen, the Consumer Advocate of Pennsylvania (Consumer Advocate) here appeals a final order of the Public Utility Commission (PUC) which established rates for the Pennsylvania Power Company (Power Company), an electric utility company serving portions of northwestern Pennsylvania. We affirm the order of the PUC.

The controversy in this case is focused on that part of the PUC order which allowed the Power Company to normalize deferred federal and state income taxes for ratemaking purposes.[1] Under the Internal

---

[1] Proceedings in this case began on April 15, 1981 when Pennsylvania Power Company filed Supplement No. 15 to its Tariff Electric—Pa. PUC No. 33. Supplement No. 15 requested an increase in total annual operating revenues of $32,735,000.00 based on a future test year ending December 31, 1981. By order adopted June 11, 1981, the PUC instituted a formal investigation of the lawfulness and reasonableness of the proposed rates and thereby suspended operation of the tariff supplement until January 14, 1982. The matter was assigned for hearing and six complaints against the proposed rate increase were filed by the Borough of Enon Valley, the Consumer Advocate, West Penn Asphalt Co., Inc., State Representative Ralph D. Pratt, Sharon Steel Company, and Liquid Air Corporation. The complaints were consolidated with the PUC's investigation for hearing and disposition. After extensive hearings over fourteen days the Administrative Law Judge, on December 3, 1981, issued his recommended decision. Exceptions and Replies to Exceptions were timely filed by the Power Company, the PUC trial staff, and the Consumer Advocate.

Revenue Code a corporation may accelerate the depreciation of its capital assets, claiming greater depreciation deductions in the early years of an asset's life and lesser depreciation deductions in later years, as an alternative to straight-line depreciation, in which the depreciation deduction is the same in each year of an asset's life.[2]  When accelerated depreciation is employed, the greater depreciation deductions in the early years reduces the taxpayer's taxable income, resulting in a lower tax expense than if straight-line depreciation had been used.  Later in the asset's life, the deduction is less, resulting in a greater tax expense than if straight-line depreciation had been used.  The total depreciation over the entire useful life of the asset remains the same.  The normalization permitted by the PUC order allowed the Power Company to compute its tax expense chargeable to ratepayers as though its assets were depreciated according to the straight-line method when, in fact, for tax purposes, the Power Company used accelerated depreciation.[3]

---

On January 22, 1981, the PUC entered the Order appealed here and approved rate levels which would produce total annual operating revenues of $164,238,000.00, an increase in total operating revenues of $24,915,000.00.  The order also expressly approved the Power Company's claim for normalization of deferred federal and state income taxes.

[2] 26 U.S.C. §167 (1976 & Supp. III 1979).

[3] The Power Company's tax normalization claim consisted of the following elements: (a) normalization of the Asset Depreciation Range depreciation benefit, which is the difference between depreciation computed using the double-declining balance method together with straight-line rates, and that computed using the double-declining balance method together with the shorter asset depreciation range guidelines, applied to 1971-1980 vintage property; (b) normalization of the income tax effect of the difference between depreciation computed at book straight-line rates and that computed by use of the double-declining balance method, applied to assets

Our scope of review is limited by Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704, which provides, in pertinent part:

> The court shall hear the appeal without a jury on the record certified by the Commonwealth agency. After hearing, the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter A of Chapter 5 (relating to practice and procedure of Commonwealth agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence.

Before the Court, the Consumer Advocate argues that (1) the PUC's approval of tax expense normalization is not in accordance with the law, (2) the PUC's reasoning in permitting tax expense normalization in the Power Company's ratemaking constitutes error as a matter of law, and (3) the PUC's finding that the rates proposed by the Power Company were just, reasonable and in the public interest is not supported by substantial evidence. We will address the arguments seriatim.

---

placed in service during 1980; and (c) normalization of the income tax effect of the difference between depreciation computed at book straight-line rates and that computed by use of the Accelerated Cost Recovery System prescribed in the Economic Recovery Tax Act of 1981, Pub. L. No. 97-34, 95 Stat. 172 (codified as amended in scattered sections of 26 U.S.C.), applied to assets placed in service in 1981.

The Consumer Advocate does not contest the authority or propriety of the allowance of normalization for property placed in service after 1980, to which the provisions of the Economic Recovery Tax Act apply.

First, the Consumer Advocate argues that normalization of tax expenses for ratemaking purposes violates the "actual taxes paid" doctrine which prohibits a utility from charging its ratepayers any "phantom tax" not actually paid. *See Western Pennsylvania Water Co. v. Pennsylvania Public Utility Commission,* 54 Pa. Commonwealth Ct. 187, 422 A.2d 906 (1980). In advancing this argument, reliance is placed on a number of cases which include: *Riverton Consolidated Water Co. v. Pennsylvania Public Utility Commission,* 186 Pa. Superior Ct. 1, 140 A.2d 114 (1958); *Chambersburg Gas Co. v. Public Service Commission,* 116 Pa. Superior Ct. 196, 176 A. 794 (1935); and *Western Pennsylvania Water.* Reliance on these cases is misplaced, however. In each, the utility had shared in taxes paid according to a consolidated return filed with its parent company, but had computed its tax expense for ratemaking purposes as though it had filed and paid taxes as an individual corporation. The result was a claimed tax expense greater than the utility's actual tax liability under the consolidated return. The PUC and the Courts found rates based on this tax expense to be unreasonable because the tax expense claimed bore no relationship whatsoever to the actual tax liability of the utility. In the case *sub judice* the tax expense claimed *does* bear a relationship to the actual tax liability of the Power Company. The total tax effect of depreciation, over the useful life of a capital asset, is the same regardless of which method of depreciation is used. Normalization simply eliminates the distortion of the tax effect in the short run caused by accelerated depreciation and distributes evenly the total tax effect of the depreciation. Consequently while the tax expense claimed here is not equal to the actual tax liability

*in the base year,* it is derived from and reflects the effects of depreciation on the Power Company's actual tax liability in the long run and is not a "phantom tax" expense prohibited by the case law.[4]

The Consumer Advocate also directs our attention to *Pittsburgh v. Pennsylvania Public Utility Commission,* 182 Pa. Superior Ct. 551, 128 A.2d 372 (1956). In that case the PUC had refused the utility company's request to normalize its tax expense and the Superior Court affirmed. The Consumer Advocate would have us read that case to hold that normalization of taxes is not permitted. We cannot accept the Consumer Advocate's interpretation of that case. We read it to hold merely that the PUC is not required to approve normalization of taxes but is free to exercise its discretion and expertise in determining the reasonableness of proposed rates and the claimed expenses which underlie them.[5]

Next, the Consumer Advocate argues that the PUC's reasons for approving the Power Company's

---

[4] The Consumer Advocate urges that the "actual taxes paid" doctrine allows tax expenses only for actual taxes paid *in the base year.* We disagree. None of the cases cited involved actual tax expenses disallowed because they were incurred beyond the test year. The concern which gave rise to the "actual taxes paid" doctrine was that utilities claimed tax expenses which bore *no* relationship to actual tax liability.

[5] Following the Superior Court decision in *Pittsburgh,* the utility company in that case abandoned accelerated depreciation and computed its depreciation deduction according to the straight-line method. The City of Pittsburgh sued claiming that the utility's tax expense should be computed to reflect accelerated depreciation allowable under the Internal Revenue Code. The Superior Court, on the City's appeal from the PUC, opined:

> We do not believe, however, that it would be proper to *require,* as a matter of law, this utility or any other utility to use a particular method of depreciation in computing the federal income tax allowance when the law permits the

normalization claim constitute error as a matter of law. In a lengthy and comprehensive Order, in which normalization of taxes was but a single issue,[6] the PUC declined to review in detail all the arguments proffered and discussed on the issue of normalization reasoning that those familiar with public utility regulations would be familiar with the arguments. The PUC stated:

> We have in mind the fact that the majority of Federal and State regulatory commissions are now permitting normalization of taxes. We are also aware of the fact that the accounting profession, in the form of the Accounting Principles Board, favors tax normalization. . . .

> In this proceeding, the Company has pointed out that in September 1980 Standard & Poors downgraded its first mortgage bond rating to BBB+, and again in April, 1981, downgraded it to BBB. The Company asserts that it cannot issue preferred stock because it cannot meet the 1.5 times coverage test required by its charter. The Company proposed several actions in order to improve what it characterized as its deteriorating financial condition. Two of these actions . . . are treated in other sections of this Order. The third action which the

---

use of any of several methods which ultimately allows only the deduction of depreciation over the life of the property. (Emphasis in original.)
*Pittsburgh v. Pennsylvania Public Utility Commission*, 187 Pa. Superior Ct. 341, 358-59, 144 A.2d 648, 658 (1958). The Superior Court also recognized that "[i]n no event will a utility be permitted to recover by annual allowances for depreciation a total amount in excess of the original cost. . . ." *Id.* at 356, 144 A.2d at 657.

[6] The PUC Order runs forty-three pages and discusses no fewer than eighteen issues and numerous sub-issues.

Company requests is the allowance of its entire normalized tax claim.

As noted above, we believe that it is unnecessary to review all of the arguments regarding the issue of normalization versus flow-through. Suffice it to say that these arguments have once again been raised on the record in this proceeding and have been reviewed by the Commission. We conclude that it is in the public interest that this request should be granted in its entirety. We do not believe that the Company's current customers will be unduly burdened by this finding, and, more importantly, we believe such action is most fair to future customers. In addition, the allowance of the Company's claim should improve its financial position with attendant benefits, not only to its investors, but to its customers as well.

The Consumer Advocate urges that this is "end result" justification for ratemaking contrary to law and directs us to *Keystone Water Co., White Deer District v. Pennsylvania Public Utility Commission*, 477 Pa. 594, 385 A.2d 946 (1978) and *West Penn Power Co. v. Pennsylvania Public Utility Commission*, 33 Pa. Commonwealth Ct. 403, 381 A.2d 1337 (1978). We disagree with the Consumer Advocate's characterization.[7] The analysis undertaken by the PUC in the

---

[7] In *Keystone*, the PUC had argued that it was "free to depart from adherence to the rate base method of utility rate adjudication wherever the end result (*i.e.*, the revenue which the utility is permitted to earn) is deemed to be 'just and reasonable.' " *Keystone* at 602, 385 A.2d at 950. Justice POMEROY, writing in support of affirmance, rejected the argument and noted:

Absent the legal standards implicit in the present rate base/rate of return model, a Commission order and judi-

instant case, while somewhat cursory, is not the "ephemeral approach" expressly disapproved by the Supreme Court in *Keystone*.[8] The Order notes that normalization will improve the Power Company's credit rating, benefiting ratepayers as well as stockholders. In addition, the Order points out that normalization removes the burden on future ratepayers inherent in accelerated depreciation without unduly burdening present rate payers. What the Order does not include specifically is a readily apparent statement that the benefit to future ratepayers without

---

> cial review thereof would be transformed into an uncertain groping for the elusive standards of "justness" and "reasonableness". . . . While the judgment of the Commission is entitled to great weight, it should not be effectively conclusive upon a reviewing court. We think it would become so if the ephemeral approach now advocated were to prevail.

*Id.* at 609-10, 385 A.2d at 954.

[8] *Keystone* was an affirmance of a decision of the Commonwealth Court by an evenly divided Supreme Court. Many of the points in Justice POMEROY's opinion in support of affirmance were later rejected by the Court in *Pennsylvania Public Utility Commission v. Pennsylvania Gas and Water Co.*, 492 Pa. 326, 424 A.2d 1213 (1980), *cert. denied*, 454 U.S. 824 (1982) In *Pennsylvania Gas and Water*, however, the Court did not expressly reject Justice POMEROY's disapproval of an "ephemeral approach." The Court did stress, however:

> There is ample authority for the proposition that the power to fix "just and reasonable" rates imports a flexibility in the exercise of a complicated regulatory function by a specialized decision-making body and that the term "just and reasonable" was not intended to confine the ambit of regulatory discretion to an absolute or mathematical formulation but rather to confer upon the regulatory body the power to make and apply policy concerning the appropriate balance between prices charged to utility customers and returns on capital to utility investors consonant with constitutional protections applicable to both.

492 Pa. at 337, 424 A.2d at 1219.

burdening present ratepayers results from the equalization of the depreciation benefit over the useful life of capital assets. In light of the PUC's broad discretion in ratemaking matters,[9] its expertise in determining the benefits and costs associated with various accounting policies,[10] and our own familiarity with and general understanding of the effects of asset depreciation and other tax accounting practices, we do not find the treatment of the normalization issue in the PUC's Order to be conclusory as urged by the Consumer Advocate. The Order assumes a level of general understanding not beyond that possessed by the Court,[11] and proceeds to findings and conclusions based on that understanding.

Finally, the Consumer Advocate argues that the PUC's conclusion that normalization of the Power Company's depreciation benefits and tax expense is in the public interest is not supported by substantial evidence. "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pennsylvania Public Utility Commission v. D'Agata National Trucking Co.*, 25 Pa. Commonwealth Ct. 365, 370, 360 A.2d 279, 282 (1976). The record in this case is replete with evidence indicating that normalization both is and is

[9] See *UGI Corporation v. Pennsylvania Public Utility Commission*, 49 Pa. Commonwealth Ct. 69, 410 A.2d 923 (1980).

[10] See *West Penn Power Co. v. Pennsylvania Public Utility Commission*, 50 Pa. Commonwealth Ct. 164, 412 A.2d 903 (1980).

[11] Notwithstanding the knowledge and expertise in such matters which have been developed in this Court, we do not, in this opinion, abrogate or weaken in any way the statutory rule that the findings of the PUC "shall be in sufficient detail to enable the court on appeal, to determine the controverted question presented by the proceeding, and whether proper weight was given to the evidence." Section 703(e) of the Public Utility Code, 66 Pa. C. S. §703(e).

not in the public interest. The PUC found the evidence favoring normalization to be more persuasive. Even where the independent judgment of this Court would be to the contrary, we would not disturb the decision of the PUC. *McCort v. Pennsylvania Public Utility Commission,* 15 Pa. Commonwealth Ct. 355, 327 A.2d 407 (1974). The Order of the PUC is amply supported by substantial evidence in the record.

ORDER

Now, August 15, 1983, the Order of the Pennsylvania Public Utility Commission in the above referenced matter, docketed at No. R-811510 and dated January 22, 1982 is hereby affirmed.