The Bell Telephone Company of Pennsylvania, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Walter W. Cohen, Consumer Advocate, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

332

Argued January 31, 1984, before President Judge CRUMLISH, JR. and Judges WILLIAMS, JR., CRAIG, MAC-PHAIL, DOYLE, BARRY and COLINS.

*Gerard J. St. John,* with him, *Irving R. Segal, Schnader, Harrison, Segal & Lewis, Daniel J. Whelan* and *William L. Leonard,* for petitioner, The Bell Telephone Company of Pennsylvania.

*Craig R. Burgraff,* Associate Consumer Advocate, with him, *David M. Barasch,* Acting Consumer Advocate, for petitioner, Consumer Advocate Walter W. Cohen.

*Bohdan R. Pankiw,* Assistant Counsel, with him, *John A. Levin,* Assistant Counsel, *Albert W. Johnson, III,* Deputy Chief Counsel, and *Charles F. Hoffman,* Chief Counsel, for respondent.

OPINION BY JUDGE CRAIG, June 21, 1984:

In these consolidated utility ratemaking cases Bell Telephone Company of Pennsylvania (Bell) and the Office of the Consumer Advocate of Pennsylvania (OCA) each have appealed respective aspects of orders of the Pennsylvania Public Utility Commission (PUC) dated September 3, 1982 and March 8, 1983.

On December 15, 1981, Bell filed tariff revisions seeking an increase of $426,000,000 in intrastate oper-

ating revenues based on a test year ending September 30, 1982. The PUC suspended the rates, conducted an investigation and held evidentiary hearings during which Bell reduced its revenue requirement claim to $396,800,000.

On August 6, 1982, an Administrative Law Judge issued a recommended decision proposing allowance of $320,000,000. The PUC entered a Summary Form Opinion and Order on September 3, 1982, concluding that Bell had demonstrated a need for additional revenue of $255,600,000. The PUC set forth its rationale for that conclusion in the Long Form Opinion and Order issued on March 8, 1983.

Bell's appeal claims that the PUC erred in (1) using a calculated interest expense (deduction) in estimating Bell's income tax expense for the test year, resulting in a disallowance of $2,363,000 of tax expense; (2) disallowing $2,614,000 of Bell's Business Information Systems (BIS) expenses claimed for costs relating to computer programs developed by an affiliate but not used by Bell; and (3) requiring Bell to amortize payments to the affiliate for research and development of BIS programs, rather than to treat them as current expenses.

OCA's appeal argues that the PUC erred in (1) allowing Bell to use remaining life depreciation for ratemaking purposes; and (2) allowing Bell to normalize income tax benefits resulting from accelerated depreciation, rather than flowing-through those benefits to ratepayers.

In rate cases, our scope of review is limited to a determination of whether the commission violated constitutional rights, committed an error of law, or made findings which are not supported by substantial evidence. *Big Run Telephone Co. v. Pennsylvania Utility Commission,* 68 Pa. Commonwealth Ct. 296, 449 A.2d 86 (1982).

## Interest Expense and Income Taxes

In ratemaking, the operating expenses include income taxes. Interest payments on outstanding debt *(e.g.,* bonds, as distinguished from shares of equity upon which dividends are issued) are deductible in computing income tax. Therefore, the imputation of higher interest payments reduces income tax expense and the utility's concomitant revenue requirement.

Generally, a hypothetical interest expense deduction can be used in calculating a utility's test year income tax expense only where management has abused its discretion by arranging the company's capital structure in such a way that there is an unreasonably low debt-to-equity ratio. *T. W. Phillips Gas & Oil Co. v. Pennsylvania Public Utility Commission,* 50 Pa. Commonwealth Ct. 217, 412 A.2d 1118 (1980). In this case, neither the PUC nor the OCA have charged Bell with abuse of managerial discretion.

All of the parties agreed to adopt the capital structure of Bell's parent, AT&T, for purposes of calculating a fair rate of return because Bell's common stock is not traded and there is no market experience for Bell's equity. Accordingly, the OCA argues, as intervenor, that consistency demands the use of the same capital structure to calculate Bell's tax deductible interest expense. We disagree.

We addressed this issue in *Bell Telephone Co. of Pennsylvania v. Pennsylvania Public Utility Commission,* 47 Pa. Commonwealth Ct. 614, 408 A.2d 917 (1979), where the PUC computed Bell's hypothetical interest expense on the basis of AT&T's capital structure, as is here proposed by OCA. Reversing, we stated:

> The determination of fair rate of return and the calculation of tax expense are entirely different functions. The former is a matter of informed

judgment based upon a variety of factors. Tax expenses, however, are actual expenses which the utility must be permitted to recover in order to assure that the prescribed rates will produce the determined fair return.

*Id.* at 620, 408 A.2d at 921.

By using AT&T's capital structure to determine a fair rate of return, Bell does not build into its rates an interest expense commensurate with AT&T's outstanding debt. Therefore, consistency does not demand that AT&T's capital structure be used to compute the interest expense deduction from Bell's income taxes for the test year. The expense and deduction calculations must surely be consistent with one another, but must be based on Bell's, rather than AT&T's, debt and interest components.

Therefore, the PUC erred in imposing a hypothetical interest expense of $127,653,905, which is $4,748,-905 greater than Bell's actual expense.

*Business Information Systems Payments*

The second operating expense issue is whether the PUC properly disallowed part of the intercompany contract payments for the affiliated Bell Laboratories' (Bell Labs) development of data processing systems, known as Business Information Systems (BIS).

We must decide whether the PUC properly evaluated the requested BIS expenses on a per-project basis rather than as a single charge for an amalgam of projects. There is merit to both the per-project and amalgam approaches.

Bell Labs, by contract, provided centralized research and development for Bell operating companies. The PUC disallowed $2,614,000 which Bell had requested for BIS projects *not* implemented in Pennsylvania in the test year. The PUC also said that it

would require capitalization of expenses for projects now in development—when they are implemented.

AT&T controlled both Bell and Bell Labs. Therefore, the intercompany contract was subject to the affiliated interest provisions of the Public Utility Code, 66 Pa. C. S. §2102, which requires commission approval of contracts with affiliated interests. Under 66 Pa. C. S. §2102(b):

> No contract or arrangement shall receive the commission's approval unless satisfactory proof is submitted to the commission of the cost to the affiliated interest of rendering the services or of furnishing the property or service described herein to the public utility.

The next section entitled "Disallowance of excessive amounts," 66 Pa. C. S. §2102(c), provides:

> If the commission shall determine that the amounts paid or payable under a contract or arrangement filed in accordance with this section are in excess of the reasonable price for furnishing the services provided for in the contract, or that such services are not reasonably necessary and proper, it shall disallow such amounts, insofar as found excessive, in any proceeding involving the rates or practices of the public utility. In any proceeding involving such amounts, the burden of proof to show that such amounts are not in excess of the reasonable price for furnishing such services, and that such services are reasonable and proper, shall be on the public utility.

For inclusion of the full BIS contract price for ratemaking purposes, the statute requires proof of the provision of services reasonably necessary and proper, at a reasonable price. Under a per-project approach, services would be viewed as rendered only after implementation of a project. In contrast, an

amalgamated approach arguably would charge Bell
ratepayers for services not yet rendered, which would
be unreasonable under the statute. Bell had the bur-
den to establish that charging Pennsylvania ratepay-
ers for unimplemented projects is reasonable.

Bell's witness, John F. Howe, Jr., testified that
Bell's use of just four BIS projects resulted in "oper-
ational benefits" of 3.7 times the amount of Bell pay-
ments for all BIS projects since the start of the BIS
agreement in 1967.[1] Partial disallowance of the re-
quested BIS expense interfered with managerial dis-
cretion, Bell argued.

The PUC based its decision on testimony of OCA
witness Susan Shalagan, who testified that: (1) Bell's
payments included payments for systems not imple-
mented in Pennsylvania, (2) Bell Labs' expenditures
had increased rapidly, and (3) the affiliates which
were party to the BIS agreement had little incentive
or power to negotiate better terms under the agree-
ment. The PUC could have rationally believed that
Bell's testimony fell short of proving that BIS sys-
tems not implemented in Pennsylvania would benefit
Pennsylvania ratepayers either now or in the reason-
ably near future. Bell thus failed to carry its burden
of proof to show that the amounts for BIS systems not
actually used in the test year were reasonable and
proper.

We have the benefit of decisions not cited by the
parties.[2] The Supreme Judicial Court of Maine up-
held the disallowance by the Public Utilities Commis-

---

[1] Joint Reproduced Record at 183a.

[2] *New England Telephone & Telegraph Co. v. Public Utilities
Commission*, 448 A.2d 272 (Me. 1982) is an appellate decision in
*Re New England Telephone & Telegraph Co.*, 42 P.U.R. 4th 182
(1981). *Michigan Bell Telephone Co. v. Public Service Commission*,
85 Mich. App. 163, 270 N.W.2d 546 (1978), *lv. denied*, 405 Mich. 822
(1979).

sion of Maine, of expenses for four BIS projects not used in Maine. *New England Telephone & Telegraph Co. v. Public Utilities Commission*, 448 A.2d 272, 310-11 (Me. 1982). The Michigan Court of Appeals ruled that the Michigan Public Service Commission properly could "allow as reasonable expenses the costs of only those projects which Michigan Bell actually implements." *Michigan Bell Telephone Co. v. Public Service Commission*, 85 Mich. App. 163, 270 N.W.2d 546 (1978).

The PUC ordered deferral of expenses for BIS projects currently in development; on implementation, it will order capitalization of development expenses over a ten-year period. The commission relied on OCA evidence that, when implemented, BIS projects should be in service for ten years. In Bell's view, computer projects under development have no measurable life for accounting purposes and should not be capitalized as assets. In the company's view, the commission will require future ratepayers to bear new technology development expenses in order to reduce rates for present ratepayers. However, the PUC reasoned that, with capitalization, present ratepayers will not pay for benefits which future ratepayers will enjoy, and this approach will avoid payment for systems not eventually implemented.

The decision to disallow expenses for BIS projects not implemented in Pennsylvania in the test year, and to capitalize the expenses of projects on implementation, is reasonable and the findings are supported by substantial evidence. Even where the independent judgment of this court would be to the contrary, we would not disturb the decision of the PUC, *Cohen v. Pennsylvania Public Utility Commission*, 76 Pa. Commonwealth Ct. 353, 463 A.2d 1274 (1983), especially in the dynamic area of computer program system development. Should the ten-year amortization period

prove to be too long, the PUC can review its capitalization requirement in the future.

## Remaining Life Depreciation

The Office of Consumer Advocate (OCA) argues that *Pennsylvania Power & Light Co. v. Pennsylvania Public Utility Commission,* 10 Pa. Commonwealth Ct. 328, 311 A.2d 151 (1973), precludes the PUC from allowing the remaining life method of depreciation to be used, as distinguished from the whole life method, unless the utility meets the burden of proving that its book reserve deficiency is genuine.[3] We disagree with the narrow interpretation of that holding which the OCA suggests.

Our decision in *Pennsylvania Power & Light,* 10 Pa. Commonwealth Ct. at 337-341, 311 A.2d at 157-158, related established principles of law, including:

> The utility is entitled under the law to recover from its customers the original cost investment in its depreciable plant.
>
> . . . .
>
> . . . The relative weight to be given any particular evidence on depreciation is under ordinary circumstances for the Commission. The relative weight to be accorded book reserve and reserve requirements studies should be for the Commission as the trier of the facts. . . .
>
> . . . .

[3] A depreciation reserve "deficiency" results when the total amount recorded on the books in the reserve for depreciation account is less than the theoretical amount which would have been accrued if actual service life—as opposed to estimated service life—had been known when the taking of book depreciation first occurred. *Pennsylvania Power & Light Co.,* 10 Pa. Commonwealth Ct. 328, 336-37, 311 A.2d 151, 156-57 (1973); *U.G.I. Corp. v. Pennsylvania Public Utility Commission,* 49 Pa. Commonwealth Ct. 69, 73, 410 A.2d 923, 926 nn. 1-2 (1980).

Where there is an excess or deficiency in the book reserve as disclosed by the reserve requirement study, the burden of proof is on the consumers or public utility, respectively, to establish that such excess or deficiency is "genuine"....

. . . .

The PUC is not bound to accept any particular method in estimating accrued depreciation which is essentially a judgment figure. If the Commission based its finding on substantial evidence, it is binding upon appellate review.

. . .

. . . .

Where the evidence warrants it, that is where the record establishes a *genuine* excess or deficiency, the PUC and the courts may approve the remainder life theory. (Emphasis in original, citation omitted.)

The hurdle of proving the "genuineness"[4] of the deficiency was a proper obstacle for the utility in *Pennsylvania Power & Light* to bear in its efforts to overcome the PUC's exercise of discretion in choosing the whole life method of depreciation. However, it is *not* a hurdle which the PUC, the body which possesses the discretion, must overcome in allowing remaining

[4] If a deficiency occurs, the utility has underestimated the accrued depreciation of the property on its books; consequently, the remaining book value of the assets is overvalued. In a rate case, then, the deficiency may increase the utility's return on value during the period over which the deficiency had developed. *U.G.I. Corp. v. Pennsylvania Public Utility Commission*, 49 Pa. Commonwealth Ct. 69, 73, 410 A.2d 923, 926 n. 1 (1980). In order to show that the deficiency is *genuine*, the utility must prove that, during the period in which the deficiency arose, it did not earn its operating expenses plus a fair return on the value of its plant-in-service. *Id.* at 76, 410 A.2d at 928; *Pennsylvania Power & Light*, 10 Pa. Commonwealth Ct. at 341, 511 A.2d at 159.

life depreciation, particularly in an industry where, as the record shows, technological change is proceeding at a fast pace, as distinguished from the status of the electric power industry a decade ago.

Because we conclude that the PUC validly adopted the remaining life method approach by its voluntary action here, we need not decide if a like decision by the Federal Communications Commission pre-emptively mandated such an approach on the part of state commissions. *See Amendment of Part 31, FCC* Docket No. 79-105, 92 F.C.C. 2d 879-80 (1983), issued between the time of the commission's short form and long form orders here.

### Normalization of Tax Benefits

In light of this court's recent decision in *Cohen v. Pennsylvania Public Utility Commission,* 76 Pa. Commonwealth Ct. 353, 463 A.2d 1274 (1983), the OCA now concedes that normalization of deferred federal and state income taxes is permitted for rate-making purposes.

### Summary

We conclude that substantial evidence supports the PUC's orders as follows: (1) disallowing BIS expenses for development of programs not eventually implemented by Bell; (2) requiring ten-year amortization of payments to BIS for computer programs when implemented; (3) allowing Bell to use the remaining life method of depreciation for rate-making purposes; and (4) allowing Bell to normalize income tax benefits resulting from accelerated depreciation. We further conclude that the PUC committed an error of law by imposing a calculated interest expense in estimating Bell's income tax expense for the test year, thereby improperly disallowing $2,363,000 of tax expense.

Accordingly, we affirm in part and reverse in part.

## ORDER

Now, June 21, 1984, the orders of the Public Utility Commission in *Pennsylvania Public Utility Commission v. The Bell Telephone Company of Pennsylvania*, at R-811819 through R-811819C015, dated September 3, 1982 and March 8, 1983, are affirmed in all respects except as to the disallowance of $2,363,000 in tax expense, as to which the orders are reversed. These cases are remanded for recomputation accordingly. Jurisdiction is relinquished.

Judge ROGERS did not participate in the decision of this case.