**BOROUGH OF DUNCANNON,**
Petitioner,

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 14, 1998.
Decided June 22, 1998.

Guy P. Beneventano, Harrisburg, for petitioner.

Stephen E. Gorka, Assistant Counsel, for respondent.

Before DOYLE and McGINLEY, JJ., and LORD, Senior Judge.

McGINLEY, Judge.

This is an appeal from an order of the Pennsylvania Public Utility Commission (Commission) entered on August 1, 1997, in which the Commission, inter alia, (a) denied Exceptions filed by the Borough of Duncannon (Borough) to the Initial Decision of Administrative Law Judge Debra Paist (ALJ) issued October 7, 1996, at consolidated Docket Nos. A–220800F2001, C–00957246, C–00957332, and C–00957369 (Initial Decision), (b) adopted the Initial Decision, (c) ordered the Borough to make contributions in the minimum sum of $27,000.00 [1] toward the cost of new water sources for certain properties with authorized connections to an unfiltered surface water source of the Borough, (d) ordered the Borough to cap both ends of the unfiltered surface water source, and (e) provided that the Commission "shall retain jurisdiction to hear any future complaints from ... water users who may realize after the fact that they no longer have water service due to the abandonment of the [unfiltered surface water source]."

By letter dated September 13, 1995, the Borough Engineer informed Frank O. Forsyth, Jr. (Forsyth) and the PCRA that the Borough was proceeding to unilaterally discontinue use of the Fritz Run Reservoir and, as a result, water service would not be available to them after October 20, 1995. On September 26, 1995, Forsyth filed a pro se complaint and demanded that the Commission require the Borough to continue to provide water service. On October 11, 1995, PCRA filed a pro se complaint against the Borough and asserted a contractual right to continued water service from the Borough, and demanded a monetary contribution from

1. The Borough was to make contributions toward new water sources in the amount of $3,000.00 to each property owner, and $15,000.00 to the Perry County Recreation Association (PCRA).

the Borough if service was abandoned. On October 19, 1995, John M. Firkal (Firkal) filed a pro se complaint against the Borough and asserted a contractual right to free water service.

On November 31, 1995, the Borough filed the Application for Abandonment with the Commission pursuant to § 1102(a)(2) of the Public Utility Code, 66 Pa.C.S. § 1102(a)(2). Therein the Borough proposed to: 1) discontinue use of the Fritz Run Reservoir, an unfiltered surface water source, 2) discontinue operation of the transmission main running from the Fritz Run Reservoir, and 3) abandon service to all properties connected to the transmission main, including the properties of the complainants.

On January 4, 1996, the PCRA protested the Borough's application. PCRA indicated that it had filed a formal complaint against the Borough regarding the proposed abandonment. By Order dated February 6, 1996, the ALJ consolidated the Borough's application with the formal complaint proceedings filed by Forsyth, PCRA, and Firkal. An initial hearing was held on March 1 and 26, 1996. On October 7, 1996, the ALJ denied the complaints of Forsyth, PCRA, and Firkal and approved the Borough's application upon condition that the Borough make a monetary contribution.

On October 28, 1996, the Borough filed exceptions to the initial decision. On July 31, 1997, the Commission adopted the order which, inter alia, 1) denied the Borough's exceptions, 2) adopted the ALJ's decision, 3) ordered the Borough to make a contribution in the minimum sum of $27,000 toward the cost of new water sources for certain properties with authorized connections to the unfiltered surface water source, 4) ordered the

Borough to cap both ends of the unfiltered surface water source, and 5) provided that the Commission "shall retain jurisdiction to hear any future complaints from ... water users who may realize after the fact that they no longer have water service due to the abandonment of the [unfiltered surface water source]". On August 26, 1997, the Borough petitioned for review with this Court.[2]

 Our review of the Commission's decision is limited to a determination of whether the Commission violated constitutional rights, committed an error of law, or made findings of fact which are not supported by substantial evidence. *Bell Telephone of Pennsylvania v. Pennsylvania Public Utility Commission*, 83 Pa.Cmwlth. 331, 478 A.2d 921 (1984). The Commission is the ultimate factfinder, and makes all decisions as to the weight and credibility of evidence. *Consolidated Rail Corp. v. Pennsylvania Public Utility Commission*, 155 Pa.Cmwlth. 537, 625 A.2d 741 (1993).

### The Customers

The Borough contends conditioning an otherwise acceptable application to abandon public utility service upon "contributions" by the Borough to the affected customers the Commission violates due process of law under the Pennsylvania and Federal Constitutions.

Section 1102(a)(2) of the Public Utility Code (Code) provides that a utility must first apply for and obtain a certificate of public convenience prior to any abandonment of utility service to the public. 66 Pa.C.S. § 1102(a)(2). Section 1103(a) of the Code defines the general standards to be applied by the Commission in determining whether to grant such a certificate of public conve-

---

**2.** On August 19, 1997, Esther L. Edmondson filed a pro se complaint with the Commission and against the Borough and alleged that she possessed an authorized connection to the Fritz Run transmission main and requested that "she be included in any settlement to property owners who in the past have been water customers." The complaint is docketed at C–00970647. The Commission exercised jurisdiction over the complaint pursuant to the Order whereby the Commission purports to retain jurisdiction to hear any future complaints from water users with connections to the Fritz Run transmission main.

A stipulation of settlement was entered between the Borough and Mrs. Edmondson whereby the parties agree that the outcome of the Edmondson complaint proceeding will be controlled by this Court's decision and that Mrs. Edmondson will be accorded the same relief given to the other pro se complainants by this Court. On December 2, 1997, ALJ Wayne L. Weismandel entered an Initial Decision approving the Stipulation of Settlement.

nience. This section states, in pertinent part, that:

> A certificate of public convenience shall be granted by the Commission, only if the Commission shall find or determine that the granting of such certificate is necessary or proper for the service, accommodation, convenience or safety of the public. The Commission, in granting such certificate, may impose such conditions as it may deem to be just and reasonable.

66 Pa.C.S. § 1103(a).

The Pennsylvania Superior Court stated that a condition which relates to the convenience of the public pursuant to Section 1123(a) [3] "would be one providing that substitute service be furnished." *West Penn Rys. Co. v. Pennsylvania Public Utility Commission*, 142 Pa.Super. 140, 15 A.2d 539, 544 (1940). The court in *West Penn* also noted that those who receive the service are to receive consideration when determining whether to allow abandonment. *Id.* at 545. The Pennsylvania Superior Court listed the following factors to be considered when determining the necessity to abandon service: 1) the extent of loss to the utility; 2) the prospect of the system being used in the future; 3) the loss to the utility balanced with the convenience and hardship to the public upon discontinuance of such service; and 4) the availability and adequacy of the service to be substituted. *Commuters' Committee v. Pennsylvania Public Utility Commission*, 170 Pa.Super. 596, 88 A.2d 420 (1952).

■ The Superior Court found that the Commission must weigh these factors and not focus on mere cost-benefit criteria. Unless the proposed abandonment favorably survives evaluation under the *West Penn* factors the Commission has the authority to deny a utility's request to abandon service. *Warwick Water Works, Inc. v. Pennsylvania Public Utility Commission*, 699 A.2d 770 (Pa.Cmwlth.1997). Therefore, the Commission has the authority to grant, deny, or even condition an abandonment request. Anything less would improperly limit the Commission's ability to protect utility customers and expose the public to the whims of a utility seeking to cease utility service for purely financial reasons.

■ The Commission determined that the expense of bringing the Fritz Reservoir into compliance with DEP surface water regulations was substantial in light of the fact that the upgrades would only benefit seven customers. The Commission also found that private wells provided an alternative water source. ALJ Opinion, September 29, 1996, Finding of Fact No. 43, at 22; Reproduced Record at 703a. The Commission decided to grant the abandonment on condition that the Borough contribute funds toward the cost of drilling wells for those seven customers and the PCRA. The Commission did not act unjustly or unreasonably.

■ Finally, the Commission's contribution requirement did not constitute a taking of the Borough's property. Utility service is crucial to the well being of the public who usually have no other source for that service. The unique nature of utility services, including the Borough's water service, renders the service provider subject to the benefits and responsibilities set forth in the Code. The Code establishes a unique regulatory scheme whereby a utility gains a monopoly to provide a vital service to those people who typically have no other source for that service. In return for the service monopoly and freedom from competition, the utility submits itself to the Code and the jurisdiction of the Commission. A critical tenet of the Code is that a utility must provide continuous service. 66 Pa.C.S. § 1501. A utility cannot choose to provide service only when the weather is pleasant or when there is a chance for profit. *Colombo v. Pennsylvania Public Utility Commission*, 159 Pa.Super. 483, 48 A.2d 59 (1946).

■ The nature of utility service extends beyond mere profit and loss, and the Borough is not like a "regular business". A utility cannot expect to provide service only when that service is financially advantageous. The requirement placed on the Borough to provide funds for an alternative water service, a service which the Borough is current-

---

**3.** 66 Pa.C.S. § 1123(a), is the predecessor to Section 1103(a).

ly obligated to provide, is different from those "taking" cases cited by the Borough which narrowly focus on financial loss. The Commission was authorized to condition the abandonment on a contribution, and the Commission reasonably and justly exercised that authority. We afford great deference to the decision-making of the Commission because of their expertise. *Pennsylvania Electric Company v. Pennsylvania Public Utility Commission*, 166 Pa.Cmwlth. 413, 648 A.2d 63 (1994), *aff'd*, 544 Pa. 475, 677 A.2d 831 (1996).

### The PCRA

The Borough contends that the Commission erred when it ordered the contribution of $15,000.00 to the PCRA to defray the costs of a new water source. The Commission found that:

> The PCRA community campground and swimming pool is unmetered as to the pool (112,000 gallons to fill for which no charge has ever been rendered) but metered as to other usage. The PCRA uses water only two quarters of the year.
>
> . . .
>
> Since 1990, the Borough has either (1) not billed for Fritz Run water service or (2) offered to refund any money paid for Fritz Run water,
>
> . . .
>
> The Initial Decision was issued on October 7, 1996. The ALJ approved the Borough's Application to abandon service subject to five conditions. The ALJ recommended, *inter alia*, that the Borough pay each of the four affected homeowners (the Forsyths, the Firkals, the Hellers, and the trailer owner if subsequently located) three thousand dollars ($3,000), a sum equivalent to the bid price for digging a well for individual household water use. The ALJ further recommended that the Borough pay the PCRA fifteen thousand dollars ($15,000), a sum equivalent to one-half of the bid price for digging a well for the PCRA's recreational water uses such as the campground and the swimming pool.

Commission Decision, August 1, 1997, at 3–4; Reproduced Record (R.R.) at 782a–783a.

 The record created before the Commission contains facts relating to the amount of water the PCRA used and required per year, the cost of acquiring that water, and the historical charges by the Borough for water in the past. Commission Hearing, March 26, 1996 (Commission Hearing), Testimony of Richard Tremblay at 474–475; R.R. at 474a–475a; and Commission Hearing, Exhibits 11–12; R.R. at 615a–626a. The Commission's decision was supported by substantial evidence and was "just and reasonable".

Accordingly, we affirm.

### ORDER

AND NOW, this 22nd day of June, 1998, the order of the Pennsylvania Public Utility Commission in the above-captioned case is affirmed.